HUGH J. JEWETT ET AL., APPELLANTS, V. AUSTIN BLACK ET AL., APPELLEES.

60b 173
61  699

FILED APRIL 18, 1900. No. 9,227.

1. Ejectment: EQUITABLE DEFENSE: TRIAL TO COURT. Where the answer to a petition in ejectment presents an equitable counter-claim which is traversed by a reply, the issues of fact thus arising are triable to the court without a jury.

2. Evidence: OBJECTION. An objection to the introduction in evidence of a written instrument signed by several persons, on the ground that it is "incompetent, irrelevant and immaterial," is too general to call in question the due execution of the instrument or the genuineness of the signatures thereto.

Jewett v. Black.

3. **Executory Contract: Equitable Ownership.** An executory contract for the sale of land vests the equitable ownership of the property in the purchaser, and in such case the seller retains the legal title as security for the deferred installments of the purchase price.

4. **Time Essence of Contract.** In equity, time will be regarded as of the essence of a contract when it clearly and affirmatively appears that the parties intended that time should be essential.

5. **Evidence: Forfeiture: Waiver.** Evidence tending to show that forfeiture was waived, will not be considered where the question of waiver is not raised by the pleadings.

Appeal from the district court of Jefferson county. Heard below before Stull, J. *Reversed.*

*W. P. Freeman* and *John Heasty,* for appellants:

In ejectment, when the defendant alleges an equitable defense, and prays for affirmative relief, the issue presented thereby is equitable in its nature, and is triable by the court without the intervention of a jury, and such issue should be determined first, for upon the right of the defendant to recover upon his equitable counter-claim will depend the necessity of proceeding with the legal issue. 7 Ency. Pl. & Pr., 810; *Estrada v. Murphy,* 19 Cal., 248; *Kahn v. Old Telegraph Mining Co.,* 2 Utah, 174; *Sussenbach v. First Nat. Bank,* 5 Dak., 477; *Swasey v. Adair,* 88 Cal., 179; *Carmen v. Johnson,* 20 Mo., 108; *Hynds v. Safford,* 39 Barb. [N.Y.], 625; *Murray v. Walker,* 31 N. Y., 399. *Smith v. Moberly,* 15 B. Mon. [Ky.], 73; *South End Mining Co. v. Tinney,* 35 Pac. Rep. [Nev.], 90; *Van Orman v. Spafford,* 16 Ia., 186; *Delay v. Chapman,* 2 Ore., 245; *Cooper v. Smith,* 16 S. Car., 333; *Smith v. Bryce,* 17 S. Car., 539; *Adickes v. Lowry,* 12 S. Car., 108; *Allen v. Logan,* 96 Mo., 598; *Jones v. Moore,* 42 Mo., 419; *Goodman v. Nichols,* 44 Kan., 22; *Steele v. Boley,* 7 Utah, 64; *Downer v. Smith,* 24 Cal., 124; *Blum v. Robertson,* 24 Cal., 129; *Smith v. Smith,* 80 Cal., 329; *Dewey v. Hoag,* 15 Barb. [N. Y.], 365.

*Hugh J. Dobbs* and *E. H. Hinshaw, contra:*

An action in ejectment is an action at law. The prin-

ciple of law which declares that legal titles to land are cognizable only in courts of law is as old as English jurisprudence. It is always enforced by the courts; and it is held to be .the duty of the court, even though the question is not presented by the pleadings, or in briefs or argument of counsel, to recognize and give it effect. *Hipp v. Babin*, 19 How. [U. S.], 278; *Lewis v. Cocks*, 23 Wall. [U. S.], 466. In all such cases the adverse party has a constitutional and common-law right to a trial by a jury of which he can not be deprived, where the remedy at law is complete. Sedgwick & Wait, Trials of Title to Land, paragraphs 496 and 170; *Tillmes v. Marsh*, 67 Pa. St., 507. Moreover, an equitable title is not sufficient to support an action in ejectment. In such cases it is the legal and not the equitable title which is involved. *Dale v. Hunneman*, 12 Nebr., 221; *Malloy v. Malloy*, 35 Nebr., 222; *Real Estate & Trust Co. v. Kragscow*, 47 Nebr., 592. In this class of cases, therefore, courts of law alone have jurisdiction.

Time is not the essence of the contract unless it is expressly so declared by the parties themselves. *Willard v. Foster*, 24 Nebr., 205. The general rule in this state is that the parties may make time the essence of the contract, so that if there be a default in payment on the day the same is due, without any just excuse and without any waiver, afterward, the court will not interfere to keep the party in default. *Langan v. Thummel*, 24 Nebr., 265; *Patterson v. Murphy*, 41 Nebr., 818; *Brown v. Ulrich*, 48 Nebr., 409; *White v. Atlas Lumber Co.*, 49 Nebr., 82; *Whiteman v. Perkins*, 56 Nebr., 181. If time is the essence of the contract, that element may be waived. *Whiteman v. Perkins, supra.*

*J. N. Rickards*, also for appellees.

SULLIVAN, J.

This is an appeal from a judgment of the district court enforcing specific performance of a contract for the sale of a half section of land in Jefferson county. On Jan-

uary 1, 1891, Hugh J. Jewett, the owner of the property, sold it to John H. Sanford for the sum of $2,560. Of this sum part was paid when the contract was executed and a portion of the remainder was to be paid on the first day of January in each of the four succeeding years. On June 1, 1891, Sanford sold the premises to Austin and Jerry Black, the appellees herein, for the sum of $4,800, to be paid in small installments. The Blacks bought the land for the purpose of occupying and improving it. They took possession with Sanford's consent, did considerable breaking, built two dwelling houses and otherwise increased the value and usefulness of the property. They have also paid to their vendor $400 of the purchase price. They were not in default on their contract prior to November 1, 1892. Their vendor had, however, made default on his contract with Jewett by failing to pay the second installment of the purchase price which became due January 1, 1892. After Sanford had been in default for some months he surrendered his contract to plaintiff, who notified the Blacks that there had been a forfeiture of their rights and then commenced an action of ejectment against them. The defendants answered setting up an equitable counter-claim and demanding a specific execution of the surrendered contract. A trial of the cause, without the intervention of a jury, resulting in a decree which, after fixing the amount due to Jewett under his contract with Sanford, provides "that upon payment to plaintiff by the defendants Black of the several sums, interest and costs herein found to be due him, or upon the payment of said sums into court for his use and benefit, that said plaintiff make, execute and deliver to defendants Black a warranty deed as against all persons claiming by, under or through the said Jewett." From this decree the legal representatives of the plaintiff prosecute this appeal.

*In limine* is raised a question of jurisdiction. Counsel for defendants contend that the petition determines the character of the action, and that the plaintiff having

sued for the possession of the property in controversy, the judgment rendered in the action is not subject to review by appeal. To this proposition we can not agree. The answer of the defendant states facts which it is claimed constitute a cause of action against the plaintiff for specific performance of a contract. That is the action which has been tried; it is the action in which judgment has been rendered. It is the case presented by the record for review. Upon this point the decision in *Hotaling v. Tecumseh Nat. Bank*, 55 Nebr., 5, is of controlling authority.

The first argument advanced by counsel for plaintiff is that the execution of the contract between Sanford and the defendants was not proven. The instrument was received in evidence over plaintiff's objection that it was "incompetent, irrelevant and immaterial." It was, we think, properly received and it was the duty of the court to consider it. The objection interposed did not call in question the due execution of the document or the genuineness of the signatures thereto. *Gregory v. Langdon*, 11 Nebr., 166; *Rupert v. Penner*, 35 Nebr., 587; *Chicago, R. I. & P. R. Co. v. Archer*, 46 Nebr., 907; *Maul v. Drexel*, 55 Nebr., 446; *Krull v. State*, 59 Nebr., 97.

Another argument of counsel for appellants is that the court could not rightfully enforce specific performance because Jewett had no right of action against defendants to recover the purchase money due on his contract. It is also insisted that the court erred in awarding specific performance without requiring payment to Jewett of the entire sum due on the contract between the defendants and Sanford. If there had been no forfeiture of the contracts, it is very clear that Jewett would have no just claim upon the money due from the Blacks to their vendor. An executory contract for the sale of land vests the equitable ownership of the property in the purchaser. The seller in such case retains the legal title as security for the deferred installments of the purchase price. *Hendrix v. Barker*, 49 Nebr., 369. By the contract

16

of January 1, 1891, Sanford became the owner of the real estate in controversy subject to a vendor's lien in favor of Jewett. By the contract of June 1, 1891, the defendants became the equitable owners of the property subject to two vendors' liens, one in favor of plaintiff and the other in favor of Sanford. Jewett held the legal title in trust, first for Sanford and then for the Blacks. When the amount due on the first contract was tendered to Jewett, it became his duty, if still bound, to make proper conveyance to his vendee. The decree, however, requires the transfer to be made to the Blacks. Of this Mr. Sanford may have cause to complain, but not Jewett, unless the contracts upon which the Blacks rely have been forfeited and are null.

We will now consider the effect of Sanford's failure to make the payments due on January 1, 1892 and January 1, 1893. The contract contains the following provision: "In case the second party or his legal representatives shall pay the several sums of money aforesaid, punctually, and at the times above limited, and shall strictly and literally perform all and singular his agreements and stipulations aforesaid, after their true tenor and intent, then the party of the first part, his heirs or assigns, shall execute, make and deliver to said party of the second part his heirs or assigns, on the surrender of this contract, a deed conveying said premises in fee simple, with covenants of warranty. And in case the second party shall fail to make the payments aforesaid, and each of them punctually, and upon the strict terms and times above limited, and likewise to perform and complete all and each of his agreements and stipulations aforesaid, strictly and literally without any failure or default, then this contract so far as it may bind said first party, shall become utterly null and void, and all rights and interests hereby created or then existing in favor of the second party, or derived from him shall utterly cease and determine, and the rights of possession, and all equitable and legal interests in the premises hereby contracted

shall revert to and revest in said first party, without any declaration of forfeiture or act of re-entry, or any other act of said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid, or services performed, as absolutely, fully, and perfectly as if this contract had never been made. And the said party of the first part shall have the right, immediately upon the failure of the party of the second part, to comply with the stipulations of this contract, to enter upon the land aforesaid, and take immediate possession thereof, together with the improvements and appurtenances thereto belonging. And the said party of the second part, covenants and agrees that he will surrender unto the said party of the first part the said land and appurtenances without delay or hindrance."

It is now firmly established everywhere that time may be made the essence of a contract. And it will be so regarded, even in equity, if it affirmatively and clearly appear that the parties intended that time should be essential. In 3 Pomeroy, Equity Jurisprudence [2d ed.], sec. 1408, it is said: "Time may be essential. It is so whenever the intention of the parties is clear that the performance of its terms shall be accomplished exactly at the stipulated day." No particular form of words is necessary to express the intention of the parties. If they have clearly indicated their purpose that the contract shall be void if not performed within the prescribed time, that is sufficient. It is the business of the courts to enforce agreements actually made and not to make new ones, or relieve parties from obligations which they have deliberately assumed. Between the plaintiff and Sanford it was expressly stipulated that time should be of the essence of the contract, not, of course, by the use of these very words, but by the employment of terms almost as explicit. *Morgan v. Bergen*, 3 Nebr., 209; *Langan v. Thummel*, 24 Nebr., 265; *Brown v. Ulrich*, 48 Nebr., 409; *White v. Atlas Lumber Co.*, 49 Nebr., 82; *Whiteman v. Perkins*, 56

Nebr., 181; *Kimball v. Tooke,* 70 Ill., 553; *Barnard v. Lee,* 97 Mass., 92; *Cheney v. Libby,* 134 U. S., 68. The result of this conclusion, which we reach with great reluctance, is, that Sanford's contract was forfeited upon his failure to make the payment which became due January 1, 1892.

But counsel for defendants contend that the forfeiture, if there was one, has been waived; and that the judgment of the trial court is, therefore, not erroneous. We will not now determine whether the facts proven justify the conclusion that there was a waiver, because that question is not raised by the pleadings. The answer of the Blacks shows affirmatively that there was a forfeiture, and they have not attempted to plead a waiver.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.